United States District Court
Northern District of California

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

San Francisco Division

11

BRANDON JOHNSON-JACK, et al.,

Case No. 21-cv-07895-LB

12

Plaintiffs,

13

v.

**ORDER DENYING MOTION TO DISMISS**

14

HEALTH-ADE LLC,

Re: ECF No. 18

15

Defendant.

16

17

**INTRODUCTION**

18

In this consumer-products mislabeling class action, the plaintiffs allege that the defendant's

19

use of the term "Health-Ade" to market kombucha-inspired beverages, including Health-Ade

20

Kombucha, Health-Ade Plus, Health-Ade Booch Pop, Health-Ade pop, and Health-Ade Mixers,

21

violates California law. The plaintiffs' theory is that the term "Health-Ade" is misleading because

22

it implies that the defendant's products are healthy when, according to the plaintiffs, they are not

23

because they contain sugar.[1] Most courts in this district have found that mislabeling claims based

24

on this theory (*i.e.*, that it is deceptive to market products with added sugar as healthy based on

25

studies linking excess sugar consumption to disease) can survive a motion to dismiss and that the

26

27

28

[1] Compl. – ECF No. 1 at 2 (¶ 1). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

United States District Court
Northern District of California

term "healthy" is not puffery. The Ninth Circuit has not yet issued a controlling decision. Thus, the court denies the defendant's motion to dismiss.[2]

## ANALYSIS

The named plaintiffs allege that they regularly purchased Health-Ade Kombucha during the class period.[3] According to the complaint, the product's label is misleading because it implies that the drinks are healthy when the "high sugar content" makes the drinks unhealthy.[4] The plaintiffs assert claims for relief under the (1) California Business and Professions Code §§ 17200, *et seq.*, (*i.e.*, Unfair Competition Law or UCL) for unfair business practices, (2) California Business and Professions Code §§ 17500, *et seq.*, (*i.e.*, False Advertising Law or FAL) for deceptive advertising, and (3) California Civil Code §§ 1750, *et seq.*, (*i.e.*, Consumer Legal Remedies Act or CLRA) for deceptive practices.[5] They also assert claims for breach of implied and express warranties.[6]

The defendant, Health-Ade LLC, asks the court to dismiss the complaint for several reasons. Its main argument is that the term "Health-Ade" is not misleading because the amount of sugar in the products is accurately disclosed in the nutrition facts box and ingredients list on the label.[7] The defendant also contends that the term "health" is non-actionable puffery and that federal laws concerning food labeling preempt the plaintiffs' claims.[8] Finally, the defendant contends that the plaintiffs do not (1) satisfy the heightened pleading standards under Federal Rule of Civil

---

[2] The court held a hearing on the defendant's motion on January 20, 2022. All parties consented to magistrate-judge jurisdiction. Consents – ECF Nos. 8, 20.

[3] Compl. – ECF No. 1 at 27 (¶¶ 84–85).

[4] *Id.* at 27 (¶ 86).

[5] *Id.* at 31–35 (¶¶ 111–143).

[6] *Id.* at 35–36 (¶¶ 144–155).

[7] Mot. – ECF No. 18 at 10, 13–14.

[8] *Id.* at 18–19.

1   Procedure 9(b), (2) have grounds to seek injunctive relief because they have an adequate remedy

2   at law, or (3) have standing to assert claims based on products they did not purchase.[9]

3       The term "Health-Ade" implies to reasonable consumers that the defendant's products are

4   healthy, and the plaintiffs have plausibly alleged that the products are unhealthy by citing scientific

5   studies that allegedly link the consumption of sugar-sweetened beverages to negative health

6   outcomes. Whether the defendant's products are, in fact, healthy or unhealthy cannot be resolved at

7   this stage. While the term "healthy" can be difficult to define, many courts in this district have held

8   that it is not puffery because consumers rely on it when purchasing food products. Federal law does

9   not preempt the plaintiffs' claims because the challenged term is not a "health" claim or "nutrient

10  content" claim, which are the relevant types of labeling statements governed by federal law.

11      Furthermore, the plaintiffs have adequately pled "the who, what, when, where, and how" of

12  the alleged fraud for purposes of Rule 9(b) by describing the element of the label that is allegedly

13  misleading, pleading the time of the alleged fraud by reference to the class period, and supporting

14  their claim that sugar-sweetened beverages are unhealthy based on scientific studies. The plaintiffs

15  have standing to seek injunctive relief because the difficult-to-ascertain nature of the alleged

16  misrepresentation suggests that the plaintiffs will not be able to rely on the labeling statements in

17  the future. Thus, the court denies the motion to dismiss.

18

19  **1.   Applicable Legal Standard**

20      A complaint must contain "a short and plain statement of the claim showing that the pleader is

21  entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon

22  which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

23  (cleaned up). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to

24  provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

25  formulaic recitation of the elements of a cause of action will not do. Factual allegations must be

26

27

28  _____
    [9] *Id.* at 20–29.

enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (cleaned up).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up) (quoting *Twombly*, 550 U.S. at 557).

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co*., 848 F.3d 1161, 1182 (9th Cir. 2016) (cleaned up).

### 2.   Unfair Competition Statutory Claims – Reasonable Consumer Test

Claims under the CLRA, FAL, and UCL are governed by the "reasonable consumer" test. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Given that the same standard applies, courts often analyze claims under these statutes together. *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1063 (N.D. Cal. 2017) ("*Hadley I*"). "Under the reasonable consumer standard, [plaintiffs] must show that 'members of the public are likely to be deceived.'" *Williams*, 552 F.3d at 938 (cleaned up).

Generally, determining "whether a reasonable consumer would be deceived" is a question of fact. *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 16 (N.D. Cal. 2020); *see also Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). In rare situations, however, "a court may determine, as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not plausible." *Cheslow*, 445 F. Supp. 3d at 16 (cleaned up); *see, e.g.*, *Becerra v. Dr*

*United States District Court*
*Northern District of California*

*Pepper/Seven Up, Inc.*, No. 17-cv-05921-WHO, 2018 WL 1569697, at *7 (N.D. Cal. Mar. 30, 2018) (dismissing claims based on use of term "diet" because studies cited in complaint did not show the product causes weight gain); *Becerra v. Coca-Cola Co.*, No. C 17-05916 WHA, 2018 WL 1070823, at *4 (N.D. Cal. Feb. 27, 2018) (same). Moreover, whether language constitutes non-actionable puffery may be decided as a matter of law. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990) ("District courts often resolve whether a statement is puffery when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and we can think of no sound reason why they should not do so.").

### 2.1    The Alleged Meaning of "Health-Ade"

The plaintiffs assert the term "Health-Ade" implies that the product is healthy or an aid to health.[10] According to the plaintiffs, the term is deceptive because "consuming sugar-sweetened beverages is unhealthy."[11] The defendant, citing the dictionary definitions of "ade" and "kombucha," argues that the term "Health-Ade" "means a 'sweet drink' made with tea and 'sugar'" and that no reasonable consumer could be deceived as a matter of law.[12]

For purposes of this motion, the court must construe the allegations "in the light most favorable to the plaintiff[s]." *Puri v. Costco Wholesale Corp.*, No. 5:21-cv-01202-EJD, 2021 WL 6000078, at *2 (N.D. Cal. Dec. 20, 2021) (citing *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989), *abrogated by DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117 (9th Cir. 2019)); *cf. Jou v. Kimberly-Clark Corp.*, No. C-13-03075 JSC, 2013 WL 6491158, at *6 (N.D. Cal. Dec. 10, 2013) (finding that a reasonable consumer could plausibly interpret a claim that a product is "natural" to mean that it has all natural ingredients and holding that defendants' alternate interpretation that "natural" merely means the product has at least one natural ingredient did not warrant dismissal at the pleadings stage).

---

[10] Opp'n – ECF No. 24 at 13–14.

[11] Compl. – ECF No. 1 at 23–24 (¶¶ 66–67) (heading "J.") (cleaned up).

[12] Mot. – ECF No. 18 at 15–17.

United States District Court
Northern District of California

1    Here, the prominent use of the word "health" and the homophonic connection between "ade"

2   and "aid" make it plausible that reasonable consumers would construe "Health-Ade" to mean

3   healthy. The plaintiffs also point out the use of a cross on some of the subject products.[13] The

4   cross (or plus sign), which evokes the Red Cross symbol, also militates in favor of finding that it is

5   plausible that consumers would construe "Health-Ade" to mean healthy.

6    Regarding the defendant's claim that no consumer could be misled because the word "ade"

7   means "sweet drink," and the definition of kombucha describes a beverage made with sugar, that

8   issue cannot be determined as a matter of law. In *Milan v. Clif Bar & Co.*, the plaintiff alleged that

9   Clif bars were deceptively marketed as "healthy or [ ] conducive to good health and physical well-

10   being" due to the products' sugar content. No. 18-cv-02354-JD, 2019 WL 3934918, at *2 (N.D.

11   Cal. Aug. 20, 2019). The court rejected the defendant's assertion that "reasonable consumer[s]

12   would know that the challenged products contained added sugars" because the products flavor

13   names included "Chocolate Chip," "Chocolate Brownie," "Iced Oatmeal Cookie," and "S'mores."

14   *Id.* at *2 ("[T]he motion to dismiss stage is not the place to decide these questions of fact.").

15    The decision in *Becerra v. Dr Pepper/Seven Up, Inc.* does not alter the conclusion that

16   products may be misleadingly marketed as healthy even if sugar content is apparent from the name

17   of the product.[14] In that case, the court held — based on dictionary definitions — that the word

18   "diet" when used "in a soft drink's brand name is understood as a relative claim about the calorie

19   content of that soft drink compared to the same brand's 'regular' (full-caloric) option" and not a

20   promise of weight management. 945 F.3d 1225, 1229 (9th Cir. 2019). Here, as the defendant

21   points out, the dictionary definitions of "ade" and "kombucha" alert reasonable consumers to the

22   presence of sugar. Nonetheless, the plaintiffs' claim is not that the term "Health-Ade" is

23   misleading because it implies that there is no sugar in the product. Rather, the plaintiffs allege that

24   the term is misleading because it implies that the product is healthy. The key word is "health," not

---

[13] Opp'n – ECF No. 24 at 13; Compl. – ECF No. 1 at 4–5 (¶ 14) (displaying product labels).

[14] Mot. – ECF No. 18 at 17.

"ade."[15] Therefore, the dictionary definitions of "ade" and "kombucha" do not make the plaintiffs' theory implausible.

The defendant's citation to *Silver v. BA Sports Nutrition, LLC* is not persuasive for similar reasons.[16] No. 20-cv-00633-SI, 2020 WL 2992873, at *7–8 (N.D. Cal. June 4, 2020). In *Silver*, the plaintiff claimed that using the term "Superior Hydration" to market a sugar-sweetened beverage was misleading because it implied health benefits, when in fact, the drink was not healthy due to its sugar content. *Silver*, 2020 WL 2992873, at *1. The court dismissed the complaint after determining that the term "Superior Hydration" did not plausibly convey a message of "overall healthiness and positive impact on one's well-being." *Silver*, 2020 WL 2992873, at *8 ("[T]his claim is implausible because it requires unsupported inferences – that 'Superior Hydration' conveys something more generally about overall healthiness and positive impact on one's well-being . . . ."). The term "Health-Ade," however, is materially different from the term "Superior Hydration" because the prominent use of the word "health" suggests a more direct connection to well-being. *Cf. Cheslow v. Ghirardelli Chocolate Co.*, 472 F. Supp. 3d 686, 695 (N.D. Cal. 2020) (it was "unreasonable for plaintiffs to think that the term 'white' in 'white chips' meant white chocolate chips.").

The plaintiffs' allegation that the defendant markets the challenged products as healthy is plausible and cannot be dismissed at this stage.

### 2.2    Viability of Mislabeling Claims Based on the Assertion That Sugar-Sweetened Products Are Unhealthy

The plaintiffs allege that the defendant misled consumers by marketing its products as healthy when — according to the plaintiffs — the products are unhealthy due to added sugar.[17] To support their claims, the plaintiffs cite several scientific studies and allege that scientific evidence demonstrates that consuming sugar-sweetened beverages is unhealthy.[18] The defendant contends

---

[15] Compl. – ECF No. 1 at 3, 27 (¶¶ 12, 86).

[16] Mot. – ECF No. 18 at 18.

[17] Compl. – ECF No. 1 at 2, 27–28 (¶¶ 1, 86–87).

[18] *Id.* at 6–25 (¶¶ 15–70).

United States District Court
Northern District of California

1   that the studies cited by the plaintiffs do not support their claim that the consumption of sugar-

2   sweetened beverages is unhealthy.[19]

3       As the defendant points out, in *Clark v. Perfect Bar, LLC*, the court rejected a virtually

4   identical claim. No. C 18-06006 WHA, 2018 WL 7048788, at *1 (N.D. Cal. Dec. 21, 2018), *aff'd*,

5   816 F. App'x 141 (9th Cir. 2020) ("Plaintiffs' grievance is that the packaging led them to believe

6   that the bars would be 'healthy' when, in supposed point of fact, the added sugar rendered them

7   unhealthy or, in the alternative, less healthy from what they otherwise had believed. This is

8   untenable."). And in *Truxel v. Gen. Mills Sales, Inc.*, a different court in this district — relying on

9   *Clark* — dismissed a complaint that alleged that "health and wellness claims" were deceptive

10   when used to market cereal with allegedly "high sugar content." *Truxel v. Gen. Mills Sales, Inc.*,

11   No. C 16-04957 JSW, 2019 WL 3940956, at *1, *4 (N.D. Cal. Aug. 13, 2019) ("Plaintiffs cannot

12   plausibly claim to be misled about the sugar content of their cereal purchases . . . . [T]he actual

13   ingredients were fully disclosed and it was up to the Plaintiffs, as reasonable consumers, to come

14   to their own conclusions about whether or not the sugar content was healthy for them.").

15       On the other hand, several cases in this district have permitted similar claims to proceed. In

16   *Hadley I*, the court permitted a food-labeling class action to proceed where the plaintiff alleged

17   that advertisements implying that the products were "healthy" were untrue because the products

18   contained added sugar. 273 F. Supp. 3d at 1080. Similarly, in *Krommenhock v. Post Foods, LLC*,

19   the court denied a motion to dismiss where the "crux" of the claim was that the defendant's "use

20   of prominent marketing terms expressly or implicitly advertising the products as healthy were

21   misleading because the amount of sugar in the product made those claims false." 255 F. Supp. 3d

22   938, 964–65 (N.D. Cal. 2017) (*Krommenhock I*). And in *Milan*, the court declined to dismiss a

23   claim based on a theory that Clif bars were misleadingly advertised as healthy due to the amount

24   of sugar in the bars. 2019 WL 3934918 at *2 (the "motion to dismiss stage is not the place to

25   decide" whether consumers would know whether the products contained added sugar or whether

26

27

---

[19] Mot. – ECF No. 18 at 14.

United States District Court
Northern District of California

the amount of added sugar fell below recommendations established by the Food and Drug Administration and American Heart Association).

Moreover, when the Ninth Circuit affirmed *Clark* in a non-precedential opinion, it did not hold that a plaintiff cannot maintain a mislabeling claim based on a theory that representations of healthiness are misleading in view of the sugar content of a product. Rather, the court affirmed *Clark* on the basis that federal law preempted the plaintiffs' claims. *Clark v. Perfect Bar, LLC*, 816 F. App'x 141, 143 (9th Cir. 2020).[20]

The defendant's citation to two recent Ninth Circuit decisions does not support its assertion that the plaintiffs' claims are not viable because the overall label signaled the presence of added sugars.[21] In *Moore v. Trader Joe's Co.*, the court found that Trader Joe's use of the term "100% New Zealand Manuka Honey" to market Manuka honey that was not "100% derived from a single, floral source" was not deceptive because (1) reasonable consumers know that bees are "foraging" creatures and that "it is impossible to produce honey that is derived exclusively from a single floral source[,]" (2) the price was relatively low, and (3) the "10+" on the label indicated something about the product and would lead consumers to investigate the product's purity. 4 F.4th 874, 882–86 (9th Cir. 2021). The defendant also cites *Ebner v. Fresh, Inc.* where the court held that the packing for a cosmetic lip balm was not deceptive because reasonable consumers "understand[ ] the general mechanics of these dispenser tubes and further understand[ ] that some

---

[20] The court takes judicial notice of the labels and considers them under the incorporation-by-reference doctrine. Req. for Jud. Notice – ECF No. 19; Fed. R. Evid. 201(b); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The court also takes judicial notice of the Motion for Attorney's Fees in *Hadley v. Kellogg Sales Co.*, No. 5:16-cv-4955-LHK, (N.D. Cal. Aug. 3, 2021), ECF No. 398 (Ex. A to Further Req. for Jud. Notice – ECF No. 26-1). *In re Keahey*, 414 F. App'x 919, 923 (9th Cir. 2011) ("A trial court may take judicial notice of its own records, even in unrelated cases, provided that the court complies with Federal Rule of Evidence 201 concerning judicial notice of adjudicative facts."). Nonetheless, the fact that counsel for the plaintiffs in this case stated in the Motion for Attorney's Fees in *Hadley* that "some members of a Ninth Circuit panel hearing the *Truxel* appeal — which Plaintiffs ultimately dismissed — seemed to express skepticism at the theory [that added sugar makes it misleading to market certain cereals as healthy]" is not dispositive. First, the motion is not a transcript and does not establish what members of the Ninth Circuit panel actually said concerning *Truxel* and, by implication, *Clark*. Second, the fact that the plaintiffs' counsel in this case (1) stated that a Ninth Circuit panel expressed skepticism of their theory during a hearing and (2) ultimately dismissed their appeal of *Truxel* is not even dicta and is not dispositive of any issue.

[21] Reply – ECF No. 25 at 10.

United States District Court
Northern District of California

1   product may be left in the tube to anchor the bullet [of lip balm] in place."[22] 838 F.3d 958, 965–66

2   (9th Cir. 2016).

3        Neither case guides this case. Again, the allegedly problematic aspect of the defendant's label

4   is not that it implies that the product contains no sugar, but, rather, that it falsely implies that the

5   drinks are "healthy." The plaintiffs' claim in this case is not analogous to *Moore* because it is not

6   impossible to produce healthy drinks, and there is nothing on the label to alert consumers to the

7   possibility that the defendant's products may be unhealthy due to the amount of sugar. Similarly,

8   the *Ebner* decision does not support the defendant's motion because there is no basis to hold that

9   reasonable consumers would know — as a matter of law based on their experience with the same

10  or similar product — that beverages with added sugar may be unhealthy.

11       Given the weight of authority in this district and the absence of controlling Ninth Circuit

12  precedent, the court will not dismiss the plaintiffs' complaint at this stage.

### 2.3   Puffery

14       The defendant claims that the term "health" is non-actionable puffery.[23] Puffery is a statement

15  that "is extremely unlikely to induce consumer reliance." *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513

16  F.3d 1038, 1053 (9th Cir. 2008). In this respect, "generalized, vague and unspecific assertions,

17  constitute[ ] mere 'puffery' upon which a reasonable consumer could not rely." *Glen Holly Ent.,*

18  *Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1015 (9th Cir.), *opinion amended on denial of reh'g*, 352

19  F.3d 367 (9th Cir. 2003); *Lamartina v. VMware, Inc.*, No. 5:20-cv-02182-EJD, 2021 WL

20  4133851, at *10 (N.D. Cal. Sept. 10, 2021) ("Generalized statements of corporate optimism, such

21  as business is 'healthy,' may be considered puffery.").

22       In other words, the principal issue when evaluating claimed puffery is whether a consumer

23  would rely on the challenged term. Whether a term is easily defined or measured is secondary and

24  merely informs the reliance analysis. For example, the addition of adverbs and adjectives can turn

25  an actionable objective term like "nutritious" into a non-actionable subjective term like

26

---

27  [22] *Id.* at 10–11.

28  [23] Mot. – ECF No. 18 at 18–19.

United States District Court
Northern District of California

"unbelievably nutritious" because the modifier "unbelievably" makes consumers less likely to rely on those terms. *Hadley I*, 273 F. Supp. 3d at 1084 ("The Court finds that the adverbs 'unbelievably' and 'positively' cause the statements containing 'nutritious' to be puffery . . . . '[U]nbelievably' and 'positively' sound much more like advertising lingo, that is, 'exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely.'") (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997)). In the food-marketing context, the Ninth Circuit has stated that the term "'nutritious'. . . standing on its own, could arguably constitute puffery, since nutritiousness can be difficult to measure concretely." *Williams*, 552 F.3d at 939 n.3.

But when courts in this district have analyzed the issue, those courts have found that words like "healthy," "nutritious," or "wholesome" do not constitute puffery because consumers may rely on those terms. For instance, in *Chacanaca v. Quaker Oats Co.*, the court found that "[t]he insistence that a product with (allegedly) dangerous additives is nonetheless 'wholesome'. . . arguably *could* mislead a reasonable consumer." 752 F. Supp. 2d 1111, 1125–26 (N.D. Cal. 2010) (evaluating the use of the term "wholesome" as a descriptor). In *Bruton v. Gerber Products Co.*, the court found that the following phrases were not puffery because the existence of food-labeling regulations implied that consumers rely on health-related claims on food products in making purchasing decisions: (1) "As Healthy As Fresh," (2) "Supports Healthy Growth & Development," and (3) "Nutrition for Healthy Growth & Natural Immune Support." No. 12-CV-02412-LHK, 2014 WL 172111, at *2, *11 (N.D. Cal. Jan. 15, 2014). In *Hadley I*, the court found that the terms "essential nutrients," "nutritious," and "wholesome" did not constitute puffery. 273 F. Supp. 3d at 1082–85 ("Plaintiff alleges that these statements imply that Defendant's products are healthy, but that the amount of added sugar in Defendant's products causes the products to be unhealthy. . . . Based on the fact that the terms 'nutritious,' 'essential nutrients,' and 'wholesome' might cause a reasonable consumer to think that a product is healthy, the Court cannot conclude as a matter of law that no reasonable consumer would rely on these statements.").

The defendant cites *Yumul v. Smart Balance, Inc.*, for the proposition that the term "healthy" is puffery because it is difficult to quantify. 733 F. Supp. 2d 1117, 1129 (C.D. Cal. 2010) ("Like

nutritiousness, healthiness is difficult, if not impossible, to measure concretely. Certainly, [the plaintiff] has offered no method of measuring the healthiness of a particular product. The reference to 'healthy,' therefore, can only provide context in assessing whether the other statement on the packaging is misleading."). Nonetheless, the court in *Hadley I* found that "[t]he meaning of the word 'healthy' or 'health' in this case can be measured against whether or not Defendant's products are found to be unhealthy based on the scientific studies and evidence provided by Plaintiff." 273 F. Supp. 3d at 1085. Accordingly, if the plaintiff plausibly alleges the existence of scientific studies showing that the consumption of the subject product is "unhealthy," then the court cannot find that the term "healthy" is puffery when used to market purportedly unhealthy foods.

Here, the plaintiffs cited scientific studies that purportedly support their allegation that the consumption of sugar-sweetened beverages is unhealthy.[24] These studies suggest that whether the defendant's products are healthy or not can be determined according to scientific standards. Therefore, the court cannot conclude as a matter of law that the defendant's use of the word "health" in "Health-Ade" is puffery.

### 2.4   Sufficiency of Scientific Studies Cited in the Complaint

The defendant asserts that the plaintiffs' allegations are insufficient because the studies considered products with more sugar than the challenged products and "did not involve kombucha or beverages with comparable ingredients."[25] The defendant also points out that the plaintiffs could not have consumed more than the "recommended daily limit" of sugar because they allegedly purchased "Health-Ade kombucha only once or twice per month."[26]

The allegation — that scientific studies establish that consuming sugar-sweetened beverages have negative health consequences — is sufficient to survive a motion to dismiss. For example, in *Krommenhock I*, the court declined to dismiss a complaint even though the plaintiffs cited studies

---

[24] Compl. – ECF No. 1 at 6–25 (¶¶ 15–70).

[25] Reply – ECF No. 25 at 15.

[26] *Id.* at 9.

United States District Court
Northern District of California

involving a substance (high-fructose corn syrup) that was not in the defendant's products. 255 F.
Supp. 3d at 963. The court found that "there [was] no 'mismatch' between plaintiffs' theory of
harm and the scientific materials relied on" because the plaintiffs alleged that scientific studies
supported their theory. *Id*. The court then stated that "determining the full extent of that support is
not appropriate on a motion to dismiss." *Id.* The scientific studies cited by plaintiffs plausibly
suggest that the consumption of sugar-sweetened beverages is linked to negative health
consequences and the extent to which those studies apply to the specific type of beverage at issue
here, *i.e.*, kombucha, cannot be resolved as a matter of law.

Concerning the defendant's assertion that the plaintiffs' claims fail because the plaintiffs could
not have consumed the "recommended daily limit" of sugar based on how often the plaintiffs
purchased the product, this also is not appropriate for resolution on a motion to dismiss.[27] *Milan*,
2019 WL 3934918, at *2 (the fact that the amount of sugar in the subject products "could
theoretically be consistent with the FDA's Daily Value and the AHA's daily recommendation for
added sugars . . . is hardly a basis for kicking these claims out at the motion to dismiss stage.").

### 3. Preemption

The defendant contends that federal law preempts the plaintiffs' claims because sugar is not a
"disqualifying nutrient" under federal law.[28] The defendant's preemption theory fails because it
glosses over the specific kinds of labeling claims that federal law regulates. The plaintiffs' claims
are not preempted because the challenged term, "Health-Ade," does not constitute a "health" or
"nutrient content" claim, which are the pertinent labeling claims governed by federal law.

The defendant specifically asserts that federal law (*i.e.*, the Nutritional Labeling and Education
Act, which amended the Federal Food, Drug, and Cosmetic Act) preempts the plaintiffs' claims.[29]
The Nutritional Labeling and Education Act provides that no state "may directly or indirectly

---

[27] *Id.*

[28] Mot. – ECF No. 18 at 19.

[29] *Id.*

1   establish any requirement for the labeling of food that is not identical to the federal requirements."

2   *Hawkins v. Kroger Co.*, 906 F.3d 763, 769 (9th Cir. 2018) (cleaned up). In this context, "not

3   identical to" means state requirements that "impose[ ] obligations or contain[ ] provisions

4   concerning the composition or labeling of food that are not imposed by or contained in the

5   applicable federal regulation." *Id.* (cleaned up). But the Nutritional Labeling and Education Act

6   "does not preempt any state law unless the law is 'expressly preempted.'" *Id.* at 770 (cleaned up).

7       To support its preemption argument, the defendant cites the preemption clause in 21 U.S.C. §

8   343-1(a)(5).[30] That clause provides that no state "may directly or indirectly establish . . . any

9   requirement respecting any claim of the type described in section 343(r)(1) of this title made in the

10  label or labeling of food that is not identical to the requirement of section 343(r) of this title." 21

11  U.S.C. § 343-1(a)(5). In this regard, § 343(r)(1) provides, in pertinent part, that food is misbranded

12  when labels "characterize[ ] the level of any nutrient which is of the type required by paragraph

13  (q)(1) or (q)(2) to be in the label" or when the labels "characterize[ ] the relationship of any

14  nutrient which is of the type required by paragraph (q)(1) or (q)(2) to be in the label . . . to a

15  disease or a health-related condition unless the claim is made in accordance with subparagraph (3)

16  or (5)(D) . . . ." In other words, the relevant portion of the statute provides for the regulation of

17  "nutrient content claims" and "health claims."

18      The Food and Drug Administration (FDA) has promulgated regulations under this statute.

19  According to these regulations, a "nutrient content claim" is a "claim that expressly or implicitly

20  characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or

21  under § 101.36." 21 C.F.R. § 101.13(b). Nutrient-content claims may be express or implied. *Reid*

22  *v. Johnson & Johnson*, 780 F.3d 952, 962 (9th Cir. 2015) (citing 21 C.F.R. § 101.13(b)(1)–(2)).

23  For example, "No Trans Fat" is an express nutrient-content claim. *Id.*

24      A "health claim" is "any claim made on the label or in labeling of a food, including a dietary

25  supplement, that expressly or by implication . . . characterizes the relationship of any substance to

26  a disease or health-related condition." 21 C.F.R. § 101.14(a); *see McMorrow v. Mondelez Int'l,*

27  _____

28  [30] *Id.*

1   *Inc.*, No. 17-cv-02327-BAS-JLB, 2018 WL 3956022, at *7 (S.D. Cal. Aug. 17, 2018) ("A

2   statement is a health claim only if it relates to a health related condition. General claims of health

3   and wellness are not health claims."). For example, the phrase "HEART HEALTHY/Whole grains

4   can help support a healthy lifestyle" is a health claim because it links heart health with whole

5   grains. *Hadley I*, 273 F. Supp. 3d at 1076. Like nutrient-content claims, a health claim may be

6   express or implied. *Hadley I*, 273 F. Supp. 3d at 1074 ("An implied health claim includes 'those

7   statements, symbols, vignettes, or other forms of communication that suggest, within the context

8   in which they are presented, that a relationship exists between the presence or level of a substance

9   in the food and a disease or health-related condition.'") (quoting 21 C.F.R. § 101.14(a)(1)).

10       Concerning the impermissibility of specific health and nutrient-content claims, the applicable

11   regulations provide that if certain nutrients, including "fats, saturated fats, sodium, or cholesterol

12   reach 'disqualifying levels,'" then the food seller may not make health or nutrient-content claims

13   about that product. *Hadley I*, 273 F. Supp. 3d at 1072 (citing 21 C.F.R. §§ 101.14, 101.65). Sugar

14   is not a disqualifying nutrient. *Krommenhock I*, 255 F. Supp. 3d at 956 ("The FDA has identified

15   disqualifying nutrients, including total fat, saturated fat, cholesterol, and sodium. Sugar is not one

16   of them."). Therefore, federal law preempts any state law that would prohibit health or nutrient-

17   content claims due to added sugar in the challenged products. *Hadley I*, 273 F. Supp. 3d at 1073–

18   74 ("The FDA has expressly decided not to set a disqualifying level of added sugar in food

19   products. Therefore, the Court must determine which of the statements challenged by Plaintiff are

20   implied nutrient content claims or health claims."). The FDA's consideration of and determination

21   not to set a disqualifying level of sugar does not necessarily mean that federal law preempts all

22   mislabeling claims based on allegedly excessive sugar. *See, e.g.*, *Milan*, 2019 WL 3934918, at *2

23   (finding that the "Food and Drug Administration's final rule issued in May 2016, which set a

24   Daily Reference Value 'of 10 percent of total energy intake from added sugars' . . . . [did not]

25   preempt plaintiffs' request that Clif be ordered to engage in a corrective advertising campaign, or

26   plaintiffs' theory of the case that Clif's health and wellness package messaging was deceptive

27   because of the bars' excessive sugar content.") (citation omitted).

28

United States District Court
Northern District of California

1    Because federal law regulates only labeling claims that fall into one of the above-described

2    categories (health claims and nutrient-content claims), federal law preempts only labeling claims

3    that fall into one of those two categories. *Krommenhock I*, 255 F. Supp. 3d at 959–60 ("[I]f these

4    are not expressly regulated health claims, then they possibly are implied nutrient claims or even

5    simply voluntary, unregulated claims."); *see also Ackerman v. Coca-Cola Co.*, No. CV-09-0395

6    (JG)(RML), 2010 WL 2925955, at *7 (E.D.N.Y. July 21, 2010) ("Section 403A [21 U.S.C. § 343-

7    1(a)(5)] preempts only claims based on statements that expressly or by implication characterize

8    the level of a nutrient or the relationship of a nutrient to a disease or health related condition;

9    claims based on statements not falling into those categories are not preempted.").

10   For example, in *Krommenhock I*, the court held that federal law did not preempt the plaintiff's

11   claim that a manufacturer had a duty to warn consumers of excessive sugar because the label

12   "*affirmatively misrepresented that the cereals are healthy* through labeling statements outside the

13   Nutrition Facts Panel." 255 F. Supp. 3d at 955. Thus, to establish preemption, the defendant must

14   establish that the challenged claim is a nutrient-content or health claim and not a "voluntary,

15   unregulated claim[ ]." *Id.* at 960.

16   The challenged term in this case is "Health-Ade." This term is not linked to any nutrient or any

17   specific disease or health-related condition and, therefore, is not a health claim or a nutrient-

18   content claim. The term is unregulated, and the plaintiffs' claims are not preempted. The

19   defendant's contention — that the plaintiffs are behaving as if sugar is a disqualifying nutrient —

20   misses the point. The relevant regulations only govern health and nutrient-content claims. While it

21   is true that sugar is not a disqualifying nutrient, the express preemption doctrine would apply only

22   if the plaintiffs sought to rely on state law to challenge a health claim or a nutrient-content claim,

23   which Health-Ade is not. *Chacanaca*, 752 F. Supp. 2d at 1123 (finding that "words, decals, and

24   figures" that allegedly "depict Chewy Bars as . . . a product that would contribute to a healthy and

25   wholesome lifestyle" are not "nutrient content claims, and defendant's contention that the

26   [Nutritional Labeling and Education Act] preempts the charge that they are misleading is without

27   support.").

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

The defendant cites *Clark v. Perfect Bar, LLC*, an unpublished opinion, for the proposition that federal law preempts any labeling challenge based on the amount of sugar in a product. 816 F. App'x at 143. In *Clark*, however, the Ninth Circuit stated only that, "[t]o the extent Appellants' claims advance the notion that Perfect Bar made an improper health claim due to added sugar levels in the bar, those claims are not viable." *Id.* (citing the regulatory definition of a "health claim" in 21 C.F.R. § 101.14(a)(1)). Accordingly, *Clark* confirms that mislabeling challenges to "health claims" — as federal law defines the term — are preempted. Because the challenged term is not a health claim or a nutrient-content claim, federal law does not preempt the plaintiffs' claims.

### 4. The Plaintiffs' Complaint Satisfies Rule 9(b)

The defendant asks the court to dismiss all of plaintiffs' claims because the claims purportedly fail to satisfy Federal Rule of Civil Procedure 9(b).[31] In particular, the defendant asserts that the plaintiffs' claims fail to identify the "what," "when," and "how" of the alleged fraud.

To survive the defendant's motion to dismiss, the plaintiffs' CLRA, FAL, and UCL claims "must satisfy the traditional plausibility standard of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b)." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). Satisfying this standard requires that the plaintiffs state with particularity the circumstances constituting fraud, including "the who, what, when, where, and how" of the alleged misconduct charged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The purpose of the rule is to give a defendant notice of the specific alleged "fraudulent conduct against which they must defend" and to deter plaintiffs from filing complaints in order to discover unknown wrongs. *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).

---

[31] Mot. – ECF No. 18 at 20–22.

### 4.1   The "What" of the Alleged Fraud

The plaintiffs allege that they purchased "Health-Ade Kombucha."[32] The defendant contends that this is insufficient because the defendant sells several different types of kombucha drinks with different amounts of sugar.[33] The defendant argues that under *Clark v. Hershey Co., Surzyn v. Diamond Foods, Inc.*, and *Kane v. Chobani, Inc.*, the plaintiffs' complaint should be dismissed for failing to identify the specific product the plaintiff purchased.[34] *Clark v. Hershey Co.*, No. C 18-06113 WHA, 2019 WL 913603 (N.D. Cal. Feb. 25, 2019); *Surzyn v. Diamond Foods, Inc.*, No. C 14-0136 SBA, 2014 WL 2212216 (N.D. Cal. May 28, 2014); *Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK, 2013 WL 5289253 (N.D. Cal. Sept. 19, 2013). These cases do not support the defendant's contention that the plaintiffs failed to adequately allege the "what" of the alleged fraud.

In *Clark v. Hershey Co.*, the court found that the plaintiffs had not satisfied Rule 9(b) primarily because the plaintiffs included many labels in the complaint but only some of them included the challenged term, "No Artificial Flavors." 2019 WL 913603, at *4 (dismissing UCL, FAL, and CLRA claims). Accordingly, the court held that the allegations did not give the defendant adequate notice of the labels on which the plaintiffs purportedly relied. *Id.* Here, the challenged term "Health-Ade" is identical across the different products and is present on all labels cited in the complaint. Thus, the defendant has notice of what the plaintiffs allege is fraudulent about the label.

The defendant also cites *Surzyn v. Diamond Foods, Inc.* to support its Rule 9(b) challenge. 2014 WL 2212216, at *5. In that case, the court found that the following allegation did not satisfy Rule 9(b): "Plaintiff has purchased one or more of the Products during the Class Period." *Id.* (cleaned up). The allegations here are much more specific. Both named plaintiffs allege that they "purchased 16 fluid-ounce bottles of Health-Ade Kombucha."[35] These allegations are significantly more specific than the allegations in *Surzyn*.

---

[32] Compl. – ECF No. 1 at 27 (¶¶ 84–85).

[33] Mot. – ECF No. 18 at 21.

[34] *Id.*; Reply – ECF No. 25 at 14.

[35] Compl. – ECF No. 1 at 27 (¶¶ 84–85).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Finally, the defendant cites *Kane v. Chobani, Inc*. to support its claim that the plaintiffs' complaint should be dismissed for failing to identify the specific flavor of Health-Ade Kombucha the plaintiffs purchased. 2013 WL 5289253, at *11. The section of *Kane v. Chobani, Inc.* referenced in the motion, however, dealt with the plaintiffs' standing to assert claims based on unpurchased flavors — not the adequacy of the allegations under Rule 9(b). *Id.* at *10 ("[T]he Court finds that Plaintiffs have failed to adequately demonstrate standing with regard to products they did not purchase."). Thus, the plaintiff has adequately described the alleged fraudulent conduct, and the cases cited by the defendant do not militate in favor of a different result.

### 4.2 The "When" of the Alleged Fraud

The defendant asserts that the plaintiffs' allegation concerning the timing of their purchases of the subject product is inadequate because the product's formulation and sugar levels have changed over time.[36] The plaintiffs have alleged that they purchased the product "during the Class Period approximately once or twice per month" where the "Class Period" is "any time from four years preceding the date of the filing of this Complaint to the time a class is notified."[37] These allegations are sufficient to put the defendant on notice of the time of the alleged wrongful conduct.

The defendant's citation to *Bird v. First Alert, Inc.* is not persuasive.[38] In *Bird*, the court found that the allegation that the purchases occurred during "the winter of 2011–2012" did not satisfy Rule 9(b). No. C 14-3585 PJH, 2015 WL 3750225, at *9 (N.D. Cal. June 15, 2015). That ambiguity was exacerbated by other facts: there was only one transaction at issue in *Bird*, and the plaintiff had not completed the purchase herself but rather sent her husband to make the purchase and then "looked at" the challenged labeling after the purchase. 2015 WL 3750225, at *9. Here, by contrast, the plaintiffs allege personally making routine purchases during a defined class period. These factors distinguish the alleged facts in this case from *Bird*.

---

[36] Mot. – ECF No. 18 at 21; Reply – ECF No. 25 at 25.

[37] Compl. – ECF No. 1 at 27, 29 (¶¶ 84–85, 102).

[38] Reply – ECF No. 25 at 21.

1    Moreover, this court has previously found that a complaint satisfies Rule 9(b) by defining the

2    "when" of the alleged fraud by reference to the class period. *Duran v. Creek*, No. 3:15-CV-05497-

3    LB, 2016 WL 1191685, at *5 (N.D. Cal. Mar. 28, 2016) (finding that the complaint established the

4    "when" of the alleged fraud because it "establish[ed] the class period for purchases: 'on or after

5    December 1, 2011.'"). Because the plaintiffs have identified the time when the alleged fraud

6    occurred by reference to a specific class period, they have adequately pled when the fraud

7    occurred in the context of this action.

8    **4.3    The "How" of the Alleged Fraud**

9        The defendant alleges that the plaintiffs' complaint is inadequately pled because, despite the

10   plaintiffs' citation to studies associating health risks with consumption of sugary drinks, the cited

11   studies do not involve Health-Ade kombucha.[39] The defendant also argues that the complaint fails

12   to satisfy Rule 9(b) because the plaintiffs "do not allege which drinks they supposedly bought

13   despite acknowledging that different drinks contain different amounts of sugar."[40]

14       Similar complaints that relied on studies that did not involve the specific product at issue have

15   survived Rule 9(b). *See*, *e.g.*, *Krommenhock I*, 255 F. Supp. 3d at 963 ("At this juncture, relevant

16   studies supporting plaintiffs' theory (at least in part) have been alleged, and determining the full

17   extent of that support is not appropriate on a motion to dismiss."). While the defendant relies on

18   the holding in *Becerra v. Coca-Cola Co.* to support its motion to dismiss, that case does not

19   support the defendant's assertion that the plaintiffs' claims are inadequately pled.[41] In *Becerra v.*

20   *Coca-Cola Co.*, the court found that studies, which only found a correlation — and not a causal

21   link — between diet soda and weight gain were inadequate. 2018 WL 1070823, at *4. Here, the

22   studies are significantly more persuasive. For example, the complaint alleges that (1) "[s]ugar-

23   sweetened beverage consumption causes serious liver disease, including non-alcoholic fatty liver

24   disease (NAFLD)," (2) "[h]igh-glucose or -fructose diet cause changes of the gut microbiota and

25

26

27   [39] Mot. – ECF No. 18 at 22.

     [40] *Id.* at 21.

28   [41] *Id.* at 22.

United States District Court
Northern District of California

1    metabolic disorders in mice without body weight change," and (3) there is "a clear link between

2    SSB [sugar-sweetened beverage] consumption and risk of metabolic syndrome."[42]

3         In sum, the plaintiffs' allegations satisfy the pleading requirements under Rule 9(b).

4

5    **5.   Standing to Pursue Injunctive Relief**

6         The defendant asserts that the plaintiffs are not entitled to injunctive relief because the

7    plaintiffs' allegations concerning future damages are "conjectural and hypothetical."[43] The

8    plaintiffs assert that without an injunction, the plaintiffs will continue to be misled by the allegedly

9    misleading labels.[44]

10        There are two circumstances in which a plaintiff in a false or misleading labeling case may

11   seek injunctive relief: "(i) where plaintiffs 'would like to' buy the product again but 'will not'

12   because they 'will be unable to rely on the product's advertising or labeling' without an

13   injunction; or (ii) where the consumer 'might purchase the product in the future' because they

14   'may reasonably, but incorrectly, assume the product was improved.'" *Krommenhock v. Post*

15   *Foods, LLC*, 334 F.R.D. 552, 572 (N.D. Cal. 2020) (*Krommenhock II*) (citing *Davidson v.*

16   *Kimberly-Clark Corp.*, 889 F.3d at 970).

17        Applying this rule, courts in this district have found that if plaintiffs "do not allege they want

18   to or intend to purchase the Products in the future[,]" then they do not have standing to pursue

19   injunctive relief. *Joslin v. Clif Bar & Co.*, No. 4:18-cv-04941-JSW, 2019 WL 5690632, at *3

20   (N.D. Cal. Aug. 26, 2019). Additionally, where a plaintiff's knowledge forecloses the risk of

21   future harm, the plaintiff cannot seek injunctive relief. For example, in *Rahman v. Mott's LLP* the

22   plaintiff claimed that a "No Sugar Added" label falsely represented that the defendant's apple

23   juice was healthier than other apple juices. No. 13-cv-03482-SI, 2018 WL 4585024, at *3 (N.D.

24   Cal. Sept. 25, 2018). The court denied injunctive relief because "whatever his prior state of

25

26   _____

27   [42] Compl. – ECF No. 1 at 7, 14, 22–23 (¶¶ 19, 39, 65 n.55).

     [43] Mot. – ECF No. 18 at 27.

28   [44] Opp'n – ECF No. 24 at 27.

1    knowledge, Rahman is now fully aware that 'No Sugar Added' simply means that no sugar was

2    added to a product." *Rahman*, 2018 WL 4585024, at *2.

3         On the other hand, where the challenged labels "claim therapeutic benefit, and have

4    misleading phrases . . .[,] buyers here cannot rely on the labels on a going-forward basis." *Arora v.*

5    *GNC Holdings, Inc.*, No. 19-cv-02414-LB, 2019 WL 6050750, at *15 (N.D. Cal. Nov. 15, 2019);

6    *see also Shank v. Presidio Brands, Inc.*, No. 17-cv-00232-DMR, 2018 WL 1948830, at *5 (N.D.

7    Cal. Apr. 25, 2018) (rejecting argument that the plaintiff could read labels in the future to

8    determine whether products were "all natural" and holding that the plaintiff plausibly pleaded

9    future harm by alleging that he would buy food products in the future if they were in fact all

10   natural and that he would be "'hesitant to rely' on Presidio's labeling due to the

11   misrepresentations" that he was challenging in the case). In such cases, injunctive relief may be

12   appropriate. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d at 969–70 ("Knowledge that the

13   advertisement or label was false in the past does not equate to knowledge that it will remain false

14   in the future. In some cases, the threat of future harm may be the consumer's plausible allegations

15   that she will be unable to rely on the product's advertising or labeling in the future, and so will not

16   purchase the product although she would like to.") (citing *Ries v. Ariz. Beverages USA LLC*, 287

17   F.R.D. 523, 533 (N.D. Cal. 2012) and *Lilly v. Jamba Juice*, NO. 13-cv-02998-JST, 2015 WL

18   1248027, at *4 (N.D. Cal. Mar. 18, 2015)).

19        The plaintiffs in this case allege that they want to purchase the product in the future.[45] Further,

20   the nature of the alleged mislabeling claim (*i.e.*, falsely portraying the product as healthy) suggests

21   that the plaintiffs cannot rely on the labels on a going-forward basis. Thus, the plaintiffs have

22   alleged an adequate basis to seek injunctive relief.

23

24   **6.   Whether the CLRA Claim Requires Dismissal of the UCL and FAL Equitable Claims**

25        The defendant contends that because plaintiffs alleged express and implied warranties and

26   violations of the CLRA, they have an adequate remedy at law and cannot maintain "equitable

27

28   ────────────────
     [45] Compl. – ECF No. 1 at 29 (¶ 98).

United States District Court
Northern District of California

1   claims under the UCL or FAL and cannot seek equitable relief for any claim."[46] The plaintiffs

2   counter that they are entitled to pursue alternative remedies at the pleading stage and that it would

3   be premature to dismiss their equitable claims under the UCL and FAL.[47]

4       The undersigned follows the courts in this district that find no bar to the pursuit of alternative

5   remedies at the pleadings stage and denies the motion to dismiss. *See, e.g.*, *Harris v. McDonald's*

6   *Corp.*, No. 20-cv-06533-RS, 2021 WL 2172833, at *3 (N.D. Cal. Mar. 24, 2021) ("[Defendant's]

7   argument that *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) requires rejection

8   of the equitable claims at the pleading stage is not persuasive."); *Snarr v. Cento Fine Foods Inc.*,

9   No. 19-cv-02627-HSG, 2019 WL 7050149, at *5 n.32 (N.D. Cal. Dec. 23, 2019) ("The Court

10  further rejects Defendant's argument that Plaintiffs may not seek equitable remedies given that

11  they have alleged claims for damages under the CLRA and for breach of warranty."); *Madani v.*

12  *Volkswagon Group of America, Inc.* No. 17-cv-07287-HSG, 2019 WL 3753433, at *9 (N.D. Cal.

13  Aug. 8, 2019) ("[T]he Court is persuaded that, at the pleading stage, theories of equitable remedies

14  are not barred by a plaintiff adequately pleading theories supporting monetary relief."); *Luong v.*

15  *Subaru of America, Inc.*, No. 17-cv-03160-YGR, 2018 WL 2047646, at *7 (N.D. Cal. May 2,

16  2018) ("The availability of monetary damages does not preclude a claim for equitable relief under

17  the UCL and CLRA based upon the same conduct."); *Aberin v. Am. Honda Motor Co., Inc.*, No.

18  16-cv-04384-JST, 2018 WL 1473085, at *9 (N.D. Cal. Mar. 26, 2018) ("This Court joins the

19  many other courts, however, that have reached the opposite conclusion, finding no bar to the

20  pursuit of alternative remedies at the pleadings stage."); *Adkins v. Comcast Corp.*, No. 16-cv-

21  05969-VC, 2017 WL 3491973, at *3 (N.D. Cal. Aug. 1, 2017) ("[T]his Court is aware of no basis

22  in California or federal law for prohibiting the plaintiffs from pursuing their equitable claims in

23  the alternative to legal remedies at the pleadings stage.").

24      The defendant's citation to *Shuman v. SquareTrade Inc.* does not require a different result. No.

25  20-cv-02725-JCS, 2021 WL 5113182 (N.D. Cal. Nov. 3, 2021). That case was about the alleged

26

27  _____
    [46] Mot. – ECF No. 18 at 24.

28  [47] Opp'n – ECF No. 24 at 21–22.

United States District Court
Northern District of California

United States District Court
Northern District of California

failure of the seller of consumer-product protection plans to adhere to the terms of the protection plans and was not a mislabeling action.[48] *Id.* at *11 ("[T]he factual predicate and the theory underlying his claim of unfair conduct appear to be essentially the same as his breach of contract claim. Therefore, the Court rejects Plaintiffs' argument that Gonzales's claim for restitution under the UCL is 'more certain, prompt, or efficient' than the legal remedy he seeks on his breach of contract claim."). The reasoning from *Shuman* does not apply with equal force to a mislabeling action where the plaintiff seeks modifications to the subject labels. The *Shuman* decision, therefore, does not alter the court's conclusion that the plaintiffs' equitable claims do not fail as a matter of law.

### 7. Standing to Pursue Claims for Unpurchased Products

The defendant asserts that the plaintiffs cannot pursue claims for products they did not buy.[49] The defendant points to its sale of "different kombucha flavors with differing sugar content."[50] The plaintiffs contend that because the labels are substantially similar for both the purchased and unpurchased products, they have standing to maintain claims based on products they did not buy.[51]

The general rule is that a plaintiff has standing to assert claims on behalf of unnamed class members based on products the plaintiff "did not purchase so long as the products and alleged misrepresentations are substantially similar." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012); *see also Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012). For example, in *Brown*, the plaintiffs alleged that the defendant's use of terms like "Pure, Natural & Organic" to market cosmetic products was misleading because the products were not predominately made from organic components. 913 F. Supp. 2d at 885–86. The court held that the plaintiffs had standing to assert claims for unpurchased products even though the products had "various uses and may [have been] marketed differently" because the mislabeling

---

[48] Reply – ECF No. 25 at 17.

[49] Mot. – ECF No. 18 at 28.

[50] Reply – ECF No. 25 at 20.

[51] Opp'n – ECF No. 24 at 29–30.

was common across product lines and was the "crux" of the case. *Id.* at 892; *see also Koh v. S.C. Johnson & Son, Inc.*, No. C-09-00927 RMW, 2010 WL 94265, at *3 (N.D. Cal. Jan. 6, 2010) (finding that plaintiff had standing to assert claims for mislabeling of unpurchased stain remover based on the plaintiff's purchase of window cleaner with identical "Greenlist" label). On the other hand, in *Miller*, the court found that the plaintiff did not have standing to assert claims for unpurchased products because the products were different (*i.e.*, baking chips, three drink powders, and wafers) and the language on the challenged label was different. *Miller*, 912 F. Supp. 2d at 870.

Here, the challenged term "Health-Ade" is identical across the products. The most notable difference between the products is that the "Health-Ade Mixers" are intended to be mixed with alcohol, while it appears that the other products are consumed directly.[52] The labels are also similar with the only potentially relevant difference being the equilateral cross or plus symbol on the "Health-Ade Plus" product. Because the challenged term is identical across all of the products and because subject products are all kombucha beverages, the plaintiffs have standing to assert claims for unpurchased products at the pleadings stage.

## 8. Breach of Warranty Claims

The parties appear to agree that the plaintiffs' express and implied warranty claims rise or fall with the other claims.[53] The plaintiffs' warranty claims survive because their UCL, FAL, and CLRA claims survive for the reasons stated above.[54] And, in any event, the plaintiffs have plausibly alleged breach of express and implied warranties. *Milan*, 2019 WL 3934918 at *3 (holding that "plaintiffs have plausibly alleged that those promises of health and wellness were breached due to the products' excessive sugar content[ ]" based on theory that the labels "convey a health and wellness message."). The defendant argues that the breach-of-implied-warranty claim

---

[52] Compl. – ECF No. 1 at 4–5 (¶ 14).

[53] Opp'n – ECF No. 24 at 20–22 ("Plaintiffs' breach of express warranty claims merely reiterate its erroneous plausibility and puffery arguments[.]"); Reply – ECF No. 25 at 19 ("[E]xpress and implied warranty claims rise or fall with the other claims[.]").

[54] The defendant's challenge (Mot. – ECF No. 18 at 24–25) to the defendant's "unfair" and "unlawful" prongs also fails for the same reasons.

United States District Court
Northern District of California

fails because the plaintiffs did not allege that the product was not fit for ordinary use. This argument is not persuasive. California law provides that merchantable goods must conform to "affirmations of fact made on the container or label." Cal. Com. Code § 2314. The plaintiffs allege that the defendant's product does not meet this standard.[55]

## CONCLUSION

The court denies the motion to dismiss. This disposes of ECF No. 18.

**IT IS SO ORDERED.**

Dated: February 24, 2022

_____

LAUREL BEELER
United States Magistrate Judge

---

[55] Compl. – ECF No. 1 at 36 (¶ 154).